OPINION
{¶ 1} Appellant, Richard Boccia ("appellant") entered into a contract with the City of Niles to perform certain street, storm water, and sidewalk removal and replacement of the same on Holford Street in Niles, Ohio. While the city estimated the cost of the project around $227,608, appellant was awarded the contract on the basis of his $158,967.25 bid. Two relevant provisions within the Holford Street project contract were: (1) the contractor with the city must pay all employees the required "Federal prevailing wage" and (2) the contractor could only subcontract out fifty percent of the work.
 {¶ 2} At trial, Mark Hess, Construction Contract Supervisor for the City of Niles, testified that appellant had reported the road black top, concrete sidewalk, and gutter installation would be subcontracted. This work represented nearly fifty percent of the work on the Holford Street project. In order to comply with the subcontracting limitation, any other work had to be accomplished by appellant's employees. With this in mind, appellant approached Steve Protiva ("appellee") and hired him to dig trenches and install pipe. Although the parties did not discuss other activities, appellee additionally removed sidewalk and road gutter while on the job.
 {¶ 3} Although no written agreement was drafted, appellee testified that appellant would pay him the "Federal prevailing wage" and lease any equipment necessary for the job. According to appellee, in August, 2000, appellant requested that appellee bring his equipment to the worksite and begin work immediately. Although appellee tried to set forth a specific amount for his equipment rental, appellant stated: "`Just get your equipment out there and let's get started' * * * `we'll work the numbers out later on.'"
 {¶ 4} From August 21, 2000 through September 28, 2000, appellee worked for appellant on the project. Although paid for his labor, appellee was never paid for the use of his equipment. When the project reached a standstill due to a conflict between the city and the gas company, appellee presented appellant with an invoice for the lease of the equipment. According to appellee, appellant disagreed with the figures and asked him to "re-work" them. After reconsideration, appellee notified appellant that he could not reduce the figures. According to appellee, appellant again stated he "needed better numbers." Appellant never paid appellee.
 {¶ 5} At trial, appellant stated that appellee agreed to a "flat rate" compensation whereby he would be paid $6,000 for his work. According to appellant, the $6,000 figure was based upon negotiations during which appellee allegedly accepted appellant's offer to pay him $6 per linear foot of piping that he installed on a job which required the installation of approximately 1000 linear feet of pipe. If he did not do $6,000 worth of work, any remainder would be used as money for the lease. Appellee denied appellant's construction of the agreement and denied ever assenting to a "flat rate" of $6 per linear foot of pipe.
 {¶ 6} This matter was tried to the bench on May 7, 2003. On June 30, 2003, the trial court issued its judgment in appellee's favor. Appellant now appeals and raises the following assignments of error:
 {¶ 7} "[1.] The findings of fact relative to awarding plaintiff-appellee a judgment against defendant-appellant are against the manifest weight of the evidence, thus resulting in a grossly improper interpretation of the agreement between the parties.
 {¶ 8} "[2.] The construction given the oral agreement between the parties is overbroad as a matter of law.
 {¶ 9} "[3.] The damages awarded were erroneously calculated and are not supported in the record."
 {¶ 10} As appellant's first two assignments of error attack the trial court's construction of the conflicting evidence presented at trial, we shall address them together.
 {¶ 11} In determining whether the judgment of the trial court is against the manifest weight of the evidence, an appellate court is guided by the presumption that the findings of the trial court are correct as the trial judge is in the best position to view the witnesses and observe the demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. Ratliff v. Dept. ofRehabilitations and Corrections (1999), 133 Ohio App.3d 304,309.
 {¶ 12} "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 13} Appellant presented evidence that, although he had an oral agreement with appellee, the agreement unequivocally limited appellee's compensation to $6,000 for his services. According to appellant, the $6,000 figure was based upon negotiations during which appellee allegedly accepted appellant's offer to pay him $6 per linear foot of piping that he installed on a job which required the installation of approximately 1000 linear feet of pipe. Appellant contends that the $6,000 ceiling enveloped not only the labor appellee provided but also the use of his equipment. Appellant argues that the trial court's construction of the oral agreement, allowing appellee to recover $7,400 for use of his equipment, was overbroad and against the manifest weight of the evidence.
 {¶ 14} Appellee's complaint against appellant sounded in breach of contract. In general, to establish a breach of contract a party must demonstrate: (1) the existence of a binding contract; (2) the non-breaching party performed its contractual duties; (3) the other party failed to fulfill its contractual duties without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. Laurent v. FloodData Services, Inc. (2001), 146 Ohio App.3d 392, 398, citing,Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App. 3d 95,108.
 {¶ 15} Pursuant to his contract with the City of Niles, appellant could subcontract up to fifty percent of the work; however, as he had already approached that limit,[1] he was required to hire appellee as an employee. Both appellant and appellee testified that appellant agreed to hire appellee as an employee, rather than a subcontractor, for the Holford Street project. Hence, neither party disputes that a binding oral contract existed between the parties wherein appellee would work on the construction site as appellant's employee.
 {¶ 16} At some point in August, 2000, the parties met and discussed the nature of their prospective relationship. During this meeting, appellee testified that appellant offered to hire him as his employee and lease appellee's equipment for use on the project. Nothing final regarding appellee's compensation was established at this meeting. However, appellee testified that he rejected appellant's offers to pay him $6 per linear foot of piping and $10 per linear foot of piping. Appellee testified that such a "flat rate" approach was not feasible, under the circumstances, because there are too many variables involved.[2]
 {¶ 17} Appellee testified that appellant hired appellee and placed him on appellant's payroll. Appellee was compensated at the "federal prevailing wage requirement" of $22.17 per hour. However, the parties had no specific agreement as to the lease rate of appellee's equipment. After he began working, appellee reiterated his concerns about getting compensated for the lease of his equipment; according to appellee, however, appellant responded: "Don't be beatin' me up on the price of the equipment." At no point did appellant express any shock regarding appellee's inquiry about the lease. However, appellant still refused to discuss the issue of the lease to which he purportedly agreed.
 {¶ 18} After completing the majority of the work, appellee removed his equipment on September 28, 2000. Appellee testified:
 {¶ 19} "There was only like two catch basins and a manhole, I think, left to be set and there was a delay, there was a conflict with East Ohio's gas line at the end of the street. I think that's at Warren Avenue. And we were at a standstill. And I couldn't, I couldn't afford to sit around. I had other work that I could go do. And I said, `Hey, Richard, I can't sit here.'
 {¶ 20} "And he goes, `Well,' he goes, `I can't do anything until these, you know, the City and East Ohio, we all get together here and see what's what.' He says, `I understand if you got to work.' He said, `If you've got to go, go.'"
 {¶ 21} At the time the equipment was removed, appellant testified that the work was between ninety and ninety-five percent complete. At this point, appellee presented appellant with an itemized lease bill for the use of his equipment up to September 28, 2000. According to appellee, appellant was unhappy with the amount and asked him to "re-work the numbers." After doing so, appellee discovered he could go no lower. Although, according to appellee, appellant never denied leasing the equipment, he refused to pay the lease bill.
 {¶ 22} At trial, appellant contended that the wages he paid appellee, i.e., $22.17 per hour, included the lease of appellee's equipment. However, City of Niles Construction Contract Supervisor, Mark Hess testified that the "Federal prevailing wage requirement" used by the City of Niles is used for labor only. In particular, Mr. Hess testified:
 {¶ 23} "* * * The prevailing wage rate is for just labor. If, if anybody were to approach us with a, with something that would be other than labor, we would consider that a violation of, of the prevailing wage laws."
 {¶ 24} Under these facts, appellee presented sufficient evidence to maintain his complaint for breach of contract.
 {¶ 25} Alternatively, appellant and his accountant, Frank Gagliano, testified that appellee agreed to a "flat rate" mode compensation. Mr. Gagliano testified that appellee would be paid the $6,000 flat rate which included both appellee's wages and use of his equipment. As indicated supra, the flat rate was based upon a calculation whereby appellee would be paid $6 per foot of piping for 1000 feet of piping installed. However, evidence adduced at trial demonstrated that appellee installed 1000 feet of storm line, but also removed some 1,930 linear feet of old storm gutters and additionally removed 9,035 square feet of sidewalk. Moreover, testimony indicated that appellant removed 5 manholes and 9 catch basins. In light of this extra work, which appellant characterized as "incidental" to the digging and pipe installation, appellant still maintained that appellee agreed to the $6,000 "flat rate" figure.[3]
 {¶ 26} A review of the record and the transcript of the trial indicate that there was a conflict of testimony by which reasonable minds could reach differing results. As the trier of facts, the trial judge was entitled, and it was his duty to determine the credibility of the witnesses which appeared before him. The record, however, indicates that there was sufficient credible evidence adduced to support the decision and judgment rendered by the trial court. We thus hold that the trial court did not err in its interpretation of the contract on the evidence presented at trial. Therefore, the decision and judgment of the trial court is not against the manifest weight of the evidence.
 {¶ 27} Appellant's first and second assignments of error have no merit.
 {¶ 28} In his final assignment of error, appellant contends that the trial court erred in awarding $7,400 in damages. In particular, appellant argues that the calculation was based only upon the unilateral testimony of appellee which was unsupported by competent, credible evidence. Again, appellant's third assignment of error is a challenge to the weight of the evidence offered by appellee in support of the damages he sustained from appellant's breach.
 {¶ 29} Initially, it bears noting that an owner of property is permitted to testify concerning its value because he or she is presumed to be familiar with it from having purchased or dealt with it. Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, at paragraph two of the syllabus.
 {¶ 30} At trial, appellee testified to the value of the equipment and material he provide. In particular, appellant testified to the following reasonable rental rates, all of which are based upon a monthly rental: (1) John Deere 490 Trackhoe: $4,000; (2) Ford Backhoe: $1,800; (3) construction Lazer: $300; (4) cut off saw with a diamond blade: $300; (5) Port-a-John: $100; equipment insurance: $200; (6) fuel for equipment: $400; and (7) transportation of equipment: $300.
 {¶ 31} The above values were based upon appellee's experience as a contractor and owner of the equipment. With the exception of the equipment transportation, appellee testified that he cross-referenced his estimations with commercial rental rates derived from companies who rent similar equipment.[4]
Appellee adduced competent, credible evidence on the reasonable rental value of the property used on the Holford Street Project. Therefore, we hold that the trial court properly granted appellee damages in the amount of $7400.
 {¶ 32} Appellant's final assignment of error lacks merit.
 {¶ 33} For the above reasons, appellant's assignments of error are without merit and the judgment of the Trumbull County Court of Common Pleas is affirmed.
Ford, P.J., O'Neill, J., concur.
[1] Appellant and Mark Hess testified that appellant had subcontracted the paving and the concrete work. This work represented near fifty percent of the contract bid. Thus, any additional work that appellant could not perform on his own would have to be done by parties under his employ.
[2] Appellee testified: "I told him for every foot on depth that you go down, a lot of guys use it as a rule of thumb as a dollar per foot, but that's in a wide open area. Holford Street has wires above you, all the underground utilities around you. There's a lot of variables that come into play there. I associated it with digging a gas line in the middle of a corn field that's wide open and nothing is involved but just digging a trench."
[3] On cross-examination, appellant and appellee's trial counsel had the following dialogue:
{¶ a} "Q: That measurement of six dollars a foot of pipe —
{¶ b} "A: That does not include any material. That's just to dig.
{¶ c} "Q: I understand.
{¶ d} "A: That's a sweetheart price. That's a deal.
{¶ e} "Q: Just to dig the trench for the pipe?
{¶ f} "A: Right.
{¶ g} "Q: Nothing else?
{¶ h} "A: No. It's —
{¶ i} "Q: But it includes 9,000 square feet of sidewalk?
{¶ j} "A: Somebody had to pay for his labor.
{¶ k} "Q: Does it include 9,000 square foot of sidewalk?
{¶ l} "A: Somehow I had to justify —
{¶ m} "Q: Mr. Boccia, my question —
{¶ n} "A: Yes. That's how I justified paying him 40 some hundred dollars for his labor. Surely you can follow that.
{¶ o} "Q: So the measurement of the contract of six dollars per foot of pipe somehow translates into a measurement of square foot of sidewalk?"
{¶ p} "A: Yes."
[4] Although appellant complains that appellee's estimations were not supported by competent and credible evidence, it is worth noting that he failed to object to the introduction of the information into evidence.