[Cite as *State v. Brown*, 2014-Ohio-5043.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellee,                   :

                                      No. 14AP-101
v.                                                   :        (C.P.C. No. 12CR-3945)

David Brown,                                    :         (REGULAR CALENDAR)

     Defendant-Appellant.               :

D E C I S I O N

Rendered on November 13, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee.

*Todd W. Barstow, Attorney At Law*, and *Todd W. Barstow*, for appellant.

APPEAL from the Franklin County Court of Common Pleas.

DORRIAN, J.

{¶ 1} Defendant-appellant, David Brown ("appellant"), appeals from his conviction and sentence entered by the Franklin County Court of Common Pleas on two counts of gross sexual imposition. Because we conclude the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, we affirm.

I.    **Facts**

{¶ 2} This case arises from an incident that occurred July 29, 2012, in the home of T.M. T.M. later testified at trial that appellant, whom she had recently met in the neighborhood, entered her home. T.M. testified that, after entering her home, appellant "tried to put his hands on [her], like feeling on [her]," asking why he could not be with

her.  (Tr. 18.) She testified that appellant then forcibly touched her breasts and vaginal area.  T.M. stated that appellant also forcefully grabbed her arm.  The incident ended when T.M. punched appellant in the face and kicked him.  T.M. testified that, prior to the incident, she had only known appellant for a little over a week, during which time he had been friendly.

{¶ 3}   Appellant testified that he had gotten to know T.M. very well during the weeks prior to the incident, spending time in her house, on her front porch, and with her and her daughter. He stated that a week before the incident, T.M. invited him into her home and they spent the evening in her front room, listening to music, watching YouTube videos of her nephew rap, looking through family photo albums, and visiting with her daughter and her daughter's friend. Appellant testified that during the evening, he sat on the couch with T.M., massaging her and playing with her hair.  However, T.M. denied that any such event occurred.

{¶ 4}   Appellant stated that, on the night in question, he was in T.M.'s home for a while before exiting to speak with someone and then re-entering. Appellant testified he thought it was okay to go back in the house because he had just been in there. When he was ready to leave, appellant asked if he could hug T.M., and she indicated he could. Appellant testified that, when he tried to hug T.M., she punched him instead.  Appellant indicated that he was surprised and asked why she punched him, but T.M. responded by laughing. Appellant testified that he remained in T.M.'s home for another 40 minutes to an hour after this before leaving. He maintained that he neither touched T.M. sexually nor used force on her.

{¶ 5}   The next morning following the incident, T.M. called the police.  The officers took photos of a handprint-shaped bruise on T.M.'s arm.  The police arrested appellant the following day. Appellant was subsequently charged with two counts of gross sexual imposition, in violation of R.C. 2907.05, felonies of the fourth degree. Appellant waived his right to a jury trial, and ultimately the trial judge found appellant guilty on both counts.  The trial court entered judgment sentencing appellant to 17 months of imprisonment for each count, to be served concurrently.  Furthermore, the court classified appellant as a Tier I sexual offender.

{¶ 6}  Appellant appeals from the trial court's judgment assigning one error for this court's review:

> THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF GROSS SEXUAL IMPOSITION AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 7}  Appellant's assignment of error asserts the judgment was not supported by sufficient evidence and was against the manifest weight of the evidence.  However, on examination of the facts of this case, we conclude that the finding of guilt was supported by sufficient evidence and was not against the manifest weight of the evidence.

## II.  Sufficient evidence supports appellant's convictions of gross sexual imposition.

{¶ 8}  Sufficiency of evidence is a "legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When judging the sufficiency of the evidence to support a criminal conviction, an appellate court must decide if, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  If the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," then it is sufficient to sustain a conviction. *Id.* at 273.

{¶ 9}  Appellant was convicted of gross sexual imposition, a fourth-degree felony, in violation of R.C. 2907.05.  The relevant part of this section provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender purposely compels the other person * * * to submit by force."  R.C. 2907.05(A)(1).

{¶ 10} For the purposes of this statute, "sexual contact" means "any touching of an erogenous zone of another, including * * * genitals, * * * pubic region, or, if the

person is female, a breast, for the purpose of sexually arousing or gratifying either person."   R.C. 2907.01(B).   "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."  R.C. 2901.01(A)(1).  Finally, a person acts "purposely" when it is his or her "specific intention to cause a certain result."  R.C. 2901.22(A).

{¶ 11} T.M. testified that, on the night in question, appellant touched her breasts and the area of her vagina against her will, asking her why he could not be with her.  She stated that, in the process of doing this, appellant grabbed her arm, "like forcefully," and when asked again what kind of strength appellant used, she said "[i]t was force." (Tr. 19, 20.) The police photos taken the next day showed a handprint-shaped bruise on her arm, which T.M. attributed to appellant's use of force.

{¶ 12} Conversely, appellant testified that he never touched T.M. sexually nor used force on her. He said he spent considerable time with her during the time since they met, even massaging her and playing with her hair a week prior. He stated that, on the night of the incident after spending time in T.M.'s home, he attempted to hug her, at which point she punched and kicked him. He later testified that T.M., who suffers from epilepsy, had possibly had a seizure on the night in question.  The questions asked by appellant's counsel at trial suggested T.M.'s condition contributed to unclear memories of the evening.

{¶ 13} T.M.'s testimony, if believed and viewed in a light most favorable to the prosecution, would establish all the essential elements of gross sexual imposition beyond a reasonable doubt.  Her testimony would establish that appellant had sexual contact with her by touching her breasts and vaginal area and that he compelled her to submit to such contact with force.  The use of force is further corroborated by the picture of the handprint-shaped bruise on her arm and T.M.'s testimony that appellant gave her the bruise.  Finally, her testimony, if believed, would establish that appellant acted purposely, with a specific intention to touch her breasts and vaginal area. Thus, a rational finder of fact could conclude that the elements of gross sexual imposition were proven beyond a reasonable doubt.

**III.    The manifest weight of the evidence supports appellant's convictions of gross sexual imposition.**

{¶ 14} "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson,* 113 Ohio St.3d 382, 387, 2007-Ohio-2202. *See also Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 15} After reviewing the entire record, including the testimony of appellant and T.M., we are unpersuaded that the trier of fact, the trial judge, lost his way and created a manifest miscarriage of justice. The trial judge had the opportunity to hear from T.M. and appellant regarding the events of the night in question. The trial judge had the opportunity to weigh the evidence of each element of the crime of gross sexual imposition.

{¶ 16} As discussed above, T.M. described what happened during the incident and how appellant touched her inappropriately and forcefully. Appellant offered a contradictory account, claiming he only tried to hug T.M. after spending time with her in her home and asserting that he never touched her private areas and never with force. Appellant also provided an alternate account of his general relationship with T.M. While T.M. claimed she had only spoken with appellant in passing outside her house,

appellant testified that he had gotten to know T.M. very well, spending time with her inside her home, meeting her daughter, and going to the store with both of them.

{¶ 17} On appeal, appellant notes the weaknesses of T.M.'s testimony, concluding that her testimony "was clearly suspect and not worthy of belief." (Appellant's Brief, 3.) Yet, a defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. Appellant acknowledges that weight of the evidence "depends on its effect in inducing belief." (Appellant's Brief, 2.) Inducing belief when the trier of fact is faced with two different accounts ultimately comes down to credibility. Because the trial judge was present in the courtroom with the witnesses, he was in the best possible situation to assess the credibility of T.M. and appellant. *See Ratliff v. Ohio Dept. of Rehab. & Corr.*, 133 Ohio App.3d 304, 309 (10th Dist.1999), citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) ("[A] reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.").

{¶ 18} As the trier of fact, the judge was "entitled to believe or disbelieve" each testimony. *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 31, citing *Rankin* at ¶ 30. Although this court acts as a "thirteenth juror" when considering the manifest weight of the evidence, "it also must give due deference to the fact finder's determination of the witnesses' credibility." *Rankin* at ¶ 29. The trial judge found T.M. credible and appellant not credible, and this court affords great deference to that determination.

{¶ 19} Moreover, we find the trial judge had reason to find appellant less than credible. Appellant said he met T.M.'s daughter on a couple of occasions, yet he did not know her name. Even though he could describe T.M.'s house, the meals he ate, and the specific conversations that happened, he blamed his lack of knowledge of her daughter's name on the fact the events happened so long ago. Appellant suggests that T.M. might have had a seizure on the night in question and testified at trial that she was shaking after she hit him, but admitted he did not seek assistance for her.

{¶ 20} Ultimately, despite inconsistencies between the testimony of appellant and T.M., we cannot conclude that the trial court clearly lost its way in finding the state's witness to be more credible than appellant. The trial judge concluded, "I believe the victim. I don't believe [appellant]. It is a matter of credibility, as it usually is." (Tr. 124.) The evidence satisfies every element of a gross sexual imposition conviction and does not weigh heavily against the conviction. Therefore, appellant's convictions were not against the manifest weight of the evidence.

## IV.   Conclusion

{¶ 21} The testimony presented at trial was sufficient to permit the trier of fact to find that all elements of the charge of gross sexual imposition were proven beyond a reasonable doubt. Furthermore, after reviewing the testimony and evidence presented at trial, we conclude that the trier of fact did not clearly lose its way in finding appellant guilty of gross sexual imposition. The finding of guilt was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 22} Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

CONNOR and O'GRADY, JJ., concur.

_____