OPINION
{¶ 1} Defendant-appellant, Daniel J. Fugate ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting him of one count of burglary in violation of R.C. 2911.12(A)(3), and one count of theft in violation of R.C.2913.02, entered upon a jury verdict. Appellant was sentenced to serve a two-year period of incarceration.[1]
 {¶ 2} The facts underlying the charges in this case are as follows. In 2005, Stephanie Hannah lived at 5366 Bridlecreek Way in Hilliard, Ohio, with her boyfriend Scott Williams. In the beginning of June 2005, Scott went to jail on a domestic violence charge. While Scott was in jail, Stephanie began dating appellant. Stephanie and appellant had known each other for several years as they grew up in the same neighborhood on the southside of Columbus. Upon Scott's release from jail in mid-June, the relationship between Stephanie and appellant ended. Stephanie went to stay with her mother for a few days, and did so from approximately June 12 to June 16, 2005. When Stephanie returned to her apartment on June 16, she noticed that the apartment door had been kicked in, and several items had been taken, such as a television, a DVD player, a stereo, diamond earrings and a diamond ring, both of which were gifts from Scott, a number of CD's and DVD's, and a bottle of Crown Royal alcohol. Stephanie called the police and reported the burglary.
 {¶ 3} The police arrived at Stephanie's apartment, talked to some neighbors, and took a report. Stephanie's neighbor, Amy Hannah[2] told police that at some point between June 12 and June 16, 2005, she was outside smoking when she saw two people taking items from Stephanie's apartment and put them into a van. Amy gave a description of the persons she saw to the police, and the police relayed the information to Stephanie. Later that day, Stephanie showed Amy a picture of appellant, and Amy recognized him as one of the persons involved. However, a few weeks later Amy was unable to pick appellant out of a photo line-up that was presented to her by the police. Although at trial, Amy did identify appellant as the man she saw taking things from Stephanie's apartment between June 12 and June 16, 2005.
 {¶ 4} After finding the items missing from her apartment, Stephanie went back to her mother's house and ran into appellant and his girlfriend Dolly Marcum. Dolly and appellant began dating on or about June 12 or June 13, 2005. Dolly's mother lives near Stephanie's mother, and when Dolly and appellant drove up, Stephanie approached their car and noticed a bottle of Crown Royal in the vehicle. By this time, appellant had exited the car and Stephanie proceeded to confront him about the burglary. According to Stephanie, appellant said that he had her property, and told Stephanie, "you can't prove it." (Tr. at 59.) Stephanie's mother, Sue Ellen, testified that she was present and heard appellant's statements. Thereafter, Sue Ellen called the police, and said "there was a confrontation in the street with a lot of people, and there could be trouble or violence." (Id. at 229.) At trial, Sue Ellen admitted that she lied to the dispatcher, but explained that she did so to get the police to respond quickly. The police did respond, and arrested appellant a short distance away.
 {¶ 5} On June 30, 2005, the Franklin County Grand Jury indicted appellant on one count of burglary, a felony of the second degree, in violation of R.C. 2911.12, and one count of theft, a felony of the fifth degree, in violation of R.C.2913.02. A jury trial commenced on February 2, 2006. On February 9, 2006, the jury returned a verdict of not guilty of burglary as a second-degree felony, but guilty of the lesser-included offense of burglary as a third degree felony, and guilty of theft as indicted. The trial court sentenced appellant to two years incarceration to be served concurrent to the 12-month sentence imposed in case No. 05CR-1414. The trial court awarded zero days of jail time credit on the instant case and 216 days of jail time credit in case No. 05CR-1414. Appellant timely appealed to this court.
 {¶ 6} On appeal, appellant brings the following two assignments of error:
Assignment of Error No. 1:
There was insufficient evidence to support Appellant's conviction and the verdicts were against the manifest weight of the evidence. This denied Appellant due process under the state and federal Constitutions.
Assignment of Error No. 2:
The trial court erred in failing to give Appellant jail time credit against each of the concurrent terms in violation R.C.2967.191. The court's action deprived Appellant of equal protection under the Fourteenth Amendment to the United States Constitution.
 {¶ 7} In his first assignment of error, appellant challenges both the sufficiency and the weight of the evidence. The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, followed.)
 {¶ 8} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas
(1982), 70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001), 90 Ohio St.3d 460, 484; Jenks,
supra.
 {¶ 9} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other."State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 10} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C0-00553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 11} In the case before us, appellant submits the evidence to convict him of burglary and theft was insufficient and against the manifest weight of the evidence. Specifically, appellant claims that there is no credible evidence that appellant was involved in the alleged theft and burglary of Stephanie's apartment. Appellant attacks the credibility of Stephanie and Sue Ellen's testimony, referring to it as "convenient" and "unlikely to the point of being contrived." (Appellant's brief at 17.) Although appellant attacks most of the witnesses' credibility, an appellate court does not weigh credibility when considering an insufficiency of the evidence argument. State v. Coit, Franklin App. No. 02AP-475, 2002-Ohio-7356, citing Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. We find the testimony and the evidence, when viewed in a light most favorable to the prosecution, as we are required to do, could convince the average mind of appellant's guilt beyond a reasonable doubt.
 {¶ 12} Amy Hannah, who knew none of the involved parties prior to this incident, testified that she saw appellant and a young woman with a tattoo on her back removing items from Stephanie's apartment. Although Stephanie is the only witness said to have such a tattoo, Amy indicated that the woman she saw with appellant was not Stephanie. Amy stated she observed these persons during the relevant time frame, to wit: between June 12 and June 16, 2005. Amy recalled seeing the persons carry out some small boxes and what appeared to be stereo equipment and things of that nature.
 {¶ 13} Columbus Police Officer Michael Votaw, the officer who responded to the burglary report, testified that he responded to Stephanie's residence at approximately noon on June 16, 2005. Officer Votaw described that the doorjamb was damaged, and "one side was splintered pretty good." (Tr. at 178.) Officer Votaw indicated that the door would have been "forced open with a kick, or shoulder, or some type of force," and that, in his opinion, the door had obviously been forced open. (Id.) According to Officer Votaw, the apartment was somewhat ransacked and appeared as if it had been burglarized because the described items were missing from the apartment. Officer Votaw explained that he went to talk to the neighbors, and Amy Hannah provided him with a physical description of the persons she observed removing things from Stephanie's apartment. Thereafter, Officer Votaw asked Stephanie if she knew anyone matching the description, which included height, weight, age, and tattoos. Stephanie indicated that the description sounded familiar and Officer Votaw listed the man described as the suspect. After her conversation with Officer Votaw, Stephanie testified that she went to Amy with a photograph of appellant, and Amy indicated that he was the man she saw.
 {¶ 14} Columbus Police Officer Jerome Collins, who was a detective with the burglary squad during the time frame at issue, received Officer Votaw's report and prepared a photo line-up consisting of six photographs to take to Amy Hannah. Officer Collins explained that Amy was unable to pick anyone out of the line-up because she "could not be sure." (Id. at 197.) Amy testified that she was unable to choose between three of the six photographs in the line-up. Officer Collins explained that appellant's photograph was one of the three that Amy had selected. After Amy was unable to pick someone out of the photo line-up, Officer Collins returned with the color photograph of appellant that Stephanie had shown Amy a few weeks prior, and Amy again identified the man in the color photograph as the one she saw removing things from Stephanie's apartment.
 {¶ 15} Stephanie and her mother, Sue Ellen, testified that appellant admitted he had Stephanie's things and that he stated Stephanie would not be able to prove it. The majority of the witnesses testifying on behalf of appellant testified that appellant had no need to force the door on Stephanie's apartment because he was living with Stephanie and had a key to her residence. Stephanie, however, testified to the contrary, and explained that appellant had just been staying with her for a few days and that he did not possess a key to her apartment.
 {¶ 16} Appellant testified on his own behalf and stated that he did not burglarize Stephanie's apartment. Appellant also advanced the theory, through his and other witness testimony, that he was being set-up by Stephanie. However, based on the evidence and the testimony of all the witnesses viewed in a light favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that appellant was indeed guilty of the offenses of which he was convicted. Thus, we find the record contains sufficient evidence to support appellant's convictions.
 {¶ 17} Similarly, we cannot say that the jury's verdict was against the manifest weight of the evidence. The basis for appellant's manifest weight argument is the witnesses' conflicting testimony, and the credibility of the witnesses. A conviction, however, is "not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Moore, Montgomery App. No. 20005,2004-Ohio-3398, quoting State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757. The weight to be given to the evidence, and the credibility of the witnesses are issues primarily for the trier of fact. DeHass, supra. Further, the jury is free to believe all, or any of the testimony.Jackson, supra. Thus, the fact that the jury may or may not have found all of a particular witness' testimony to be credible is not a basis for reversal on manifest weight grounds. After carefully reviewing the trial court's record in its entirety, we conclude that the trier of fact did not lose its way in resolving credibility determinations, nor did the convictions create a manifest miscarriage of justice. While appellant denies that he burglarized Stephanie's apartment, the trier of fact was in the best position to determine the credibility of the testimony presented and we decline to substitute our judgment for that of the trier of fact. Consequently, we cannot say that appellant's convictions are against the manifest weight of the evidence.
 {¶ 18} Accordingly, appellant's first assignment of error is overruled.
 {¶ 19} In his second assignment of error, appellant asserts the trial court erred in failing to award jail time credit against each of the concurrent sentences to which he was sentenced. At sentencing, the trial judge indicated that he was awarding 216 days of jail time credit to the 12-month sentence imposed on case No. 05CR-1414, and zero days of jail time credit to the two-year sentence imposed in the instant case. No objections were raised at the sentencing hearing; therefore, appellant has waived all but plain error. State v. Keenan
(1998), 81 Ohio St.3d 133; State v. Santiago, Franklin App. No. 02AP-1094, 2003-Ohio-2877.
 {¶ 20} Appellant maintains that he was entitled to have 216 days of jail time credit awarded to each sentence, and that the trial court's failure to do so constitutes an equal protection violation. This very issue has previously been considered and rejected by this court in State v. Eble, Franklin App. No. 04AP-334, 2004-Ohio-6721, discretionary appeal not allowed,105 Ohio St.3d 1544, 2005-Ohio-2188. In Eble, the defendant was sentenced simultaneously on two separate cases. In case No. 00CR-10-6188, the trial court imposed a four-year prison sentence and credited the defendant with 354 days of jail time credit. In case No. 00CR-11-6803, the trial court imposed a four-year sentence and credited the defendant with zero days of jail time credit. Further, the trial court ordered both sentences to be served concurrently. On appeal, the defendant alleged that he was confined for 354 days pre-sentence on both cases. Therefore, the defendant argued that because the trial court imposed a concurrent sentence, the trial court's failure to apply 354 days of jail time credit on both cases constituted error under R.C.2967.191. In response, this court applied prior precedent, and stated:
Applying standard rules of statutory construction, it is our interpretation of Crim.R. 32.2(D), when read in conjunction with R.C. 2967.191, that a trial court is not required to recognize duplicate or multiple pretrial detention credit. We do not believe that the legislature intended to entitle a defendant held and later sentenced on multiple offenses the right to multiply his single period of pretrial confinement by the No. of convictions entered against him. To do so would, in effect, discriminate in favor of the defendant charged with more than one offense over the defendant charged with only one offense.
Id. at ¶ 10, quoting State v. Fincher (Mar. 31, 1998), Franklin App. No. 97AP-1084, quoting State v. Callender (Feb. 4, 1992), Franklin App. No. 91AP-713.
 {¶ 21} We find no reason to depart from this court's prior precedent. Thus, pursuant to Eble, and the cases upon which it relied, we find that the trial court did not err in failing to credit appellant with duplicate pretrial detention credit for any of the time he was held simultaneously on the two cases.
 {¶ 22} In Eble, the defendant also argued, as appellant does here, that the failure to award jail time credit in each sentence violates his equal protection rights because it discriminates against defendants who have received concurrent prison sentences. In Eble, we stated that "[w]hen a party argues that a law that is impartial on its face is applied in a manner that improperly discriminates between similarly situated persons, `there is no denial of equal protection unless an element of intentional or purposeful discrimination is shown.'" Id. at ¶ 16, quoting Stratford Chase Apartments v. City ofColumbus (2000), 137 Ohio App.3d 29, 32. Because the record contained no evidence or allegations of intentional or purposeful discrimination, this court concluded that the defendant's constitutional claims failed. Like the defendant in Eble,
appellant has not presented any evidence, nor even alleged, any intentional or purposeful discrimination in the application of R.C. 2967.191. We reiterate, as we did in Eble, "that to award [a] defendant multiple pretrial detention credit when he is held and sentenced on more than one offense would discriminate in his favor, over the defendant charged with only one offense." Id. at ¶ 17.
 {¶ 23} Accordingly, we overrule appellant's second assignment of error.
 {¶ 24} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Bryant and Travis, JJ., concur.
[1] The trial court's judgment entry reflects that appellant's two-year sentence was to be served concurrent to the sentence imposed in case No. 05CR-1414.
[2] Although sharing the same last name, Stephanie and Amy are not related, and did not know each other prior to this incident.