OPINION
{¶ 1} Chad W. Hunter, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a plea of guilty, of attempted felonious assault, in violation of R.C. 2923.02 as it relates to R.C. 2903.11, which is a felony of the third degree.
 {¶ 2} On the evening of August 14, 2007, Brittany Smart ("Brittany"), who is appellant's ex-girlfriend, and her friend, Brooke Mix ("Brooke"), arrived at the home of *Page 2 
Brittany's mother, Cornelia Smart ("Cornelia"). Appellant and his new girlfriend were also at the residence talking to Cornelia. An argument ensued, and appellant pushed Brittany into a china cabinet and began choking her. Cornelia tried to intervene, but appellant shoved her. Appellant then grabbed Brooke and threw her into a glass table, breaking the table and causing a laceration to Brooke's left leg. Appellant then began kicking Brooke. Appellant was arrested on August 15, 2007.
 {¶ 3} On August 24, 2007, appellant was indicted on one count of felonious assault, in violation of R.C. 2903.11, and one count of domestic violence, in violation of R.C. 2919.25. On November 21, 2007, the State of Ohio, plaintiff-appellee, filed a motion to revoke appellant's bond based upon appellant's failure to comply with the conditions of his bond. Although the record is not clear with respect to the terms of the bond, it appears that appellant had been released on house arrest and he was permitted to travel to and from work, but was not allowed to leave his home for any other reason. It also appears that appellant was planning to get married, and the trial court had informed appellant that he could not leave his home for a ceremony. The state apparently moved to revoke appellant's bond because appellant had gotten married during a 45-minute lunch break during his normal work hours at his place of employment, a hotel. On November 29, 2007, the trial court held a plea hearing, and after appellant entered a plea of guilty to attempted felonious assault, the trial court granted the state's motion to revoke bond.
 {¶ 4} On December 28, 2007, the trial court found appellant guilty of attempted felonious assault, sentenced appellant to three years incarceration, and granted appellant 16 days of jail-time credit. This court granted appellant's motion for leave to file delayed *Page 3 
appeal, and appellant herein appeals the judgment, asserting the following assignments of error:
 FIRST ASSIGNMENT OF ERROR
 Trial counsel was ineffective during sentencing in criticizing his client, detailing conflicts between counsel and Appellant, and by not challenging the state's request to revoke bond where the record did not demonstrate a valid basis for the request. This violated Appellant's right to the effective assistance of counsel under the state and federal constitutions.
 SECOND ASSIGNMENT OF ERROR
 The trial court failed to award full jail credit to Appellant as a result of incorrect information submitted by his trial counsel.
 {¶ 5} Appellant argues in his first assignment of error that the sentence he received was the result of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated. Strickland v. Washington (1984),466 U.S. 668, 687. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Id.
 {¶ 6} An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that *Page 4 
counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. In demonstrating prejudice, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 7} In the present case, appellant asserts that his defense counsel, in addressing the state's motion to revoke his bond at the plea hearing, did little to protect his interests and was instead focused on personally distancing himself from his client. Appellant cites the following portion of the plea-hearing transcript involving an exchange between defense counsel and the trial court, as well as an exchange between appellant's mother, Mrs. Hunter, and the trial court:
 [DEFENSE COUNSEL]: Your Honor, on behalf of Mr. Hunter, first of all, I want to apologize on his behalf to the victim. And this is a very serious situation. The PSI I think will assist the Court in verifying Mr. Hunter has no prior involvement of any consequence. I have discussed with — and I'm in an awkward position — I have discussed in candor with the Court the motion. I also want to let the Court know that I think Mr. Hunter has acted appropriately. And I think he has discussed the facts with me intelligently. And I think that his decision is, in fact, the right decision to make. And I think it's in his best interest.
 But I also want the Court to understand there's been a significant amount of conflict this morning between myself, my client, and my client's mother. I have basically advised my client as well as his family what I believe the Court will do and why the Court will do it. They have asked me to do things that I do not wish to do. I think the fact that there is evidence that Mr. Hunter was married outside the direction of which the Court gave him the latitude to get married speaks for itself. It certainly was clear to me what you intended. But I think his mother would like to talk to you and address you about whether or not his bond should be revoked and this whole issue of the wedding. *Page 5 
 THE COURT: Ma'am, is there something somebody wanted to say to me? Whoever Mr. Hunter's mother is, what would you like to say to me?
 MRS. HUNTER: As far as the wedding?
 THE COURT: Regarding he violated.
 [DEFENSE COUNSEL]: They are revoking bond.
 MRS. HUNTER: We canceled the church wedding. When you told him he could not get married in the church, it was canceled. We had to call all the people that we had already sent invitation to and let them know the wedding was canceled. We had to tell church members to spread the word that the wedding was canceled. We canceled the whole entire wedding.
 Because their house isn't big enough to have a wedding-
 THE COURT: That is not my problem. I made the ruling clear.
 MRS. HUNTER: So we canceled everything. And one day his boss came to him. And he had heard what happened. He said we feel really bad about it, and if you want to get married on your lunch break at work in our conference room, we can. So he got married in the conference room. He went to work and everything. It was 45 minutes.
 THE COURT: It was a very unfortunate decision.
 MRS. HUNTER: He got home the regular time.
 THE COURT: Ma'am, thank you. Court's going to order Mr. Hunter held pending PSI. * * *
(Tr. Nov. 29, 2007, 8-11.)
 {¶ 8} Appellant contends that his counsel was ineffective because, instead of defending his client's actions, which were arguably consistent with the court's house-arrest restrictions, counsel distanced himself from his client and focused on conflicts that counsel had with appellant and his family. Appellant also maintains that counsel *Page 6 
continued to distance himself from his client at the subsequent sentencing hearing, pointing to the following comments by trial counsel to the court:
 [DEFENSE COUNSEL]: And from my point of view, Mr. Hunter disrespecting the Court and on behalf of Mr. Hunter I would like to apologize to the Court. Unfortunately, Mr. Hunter has not probably reacted to a number of things the way myself or you would.
 The day this happened he went to discuss visitation with the mother of two of his children. And he took the woman who he has two more children with who he was engaged to, and was going to have a fifth child with, to that residence. To my way of thinking, that's probably stupid. Mr. Hunter didn't feel that was. That probably started — and I'm not making any excuse for what happened. But that was a bad situation. And that wasn't going anyplace but south, in my view, and it did go south.
(Tr. Dec. 27, 2007, 6-7.)
 {¶ 9} Although our review is hampered by apparent discussions and obvious holdings not included in the record, we fail to find appellant's counsel was ineffective. The record is devoid of any evidence that the trial court, in revoking appellant's bond, considered anything but the fact that appellant acted in disregard of the limitations the court previously set on his release on bond. The trial court did not reference any of the statements made by appellant's counsel when it revoked appellant's bond.
 {¶ 10} Furthermore, there is no evidence that the comments made by appellant's counsel at either the plea hearing or at the sentencing hearing had any effect on the sentence the trial court ultimately ordered. After giving appellant an opportunity to address the court, the trial court stated at the sentencing hearing:
 THE COURT: Well, Mr. Hunter, it's interesting now you're sorry and you know what you did was wrong. But when I read your explanation in the Presentence Investigation which was taken on December 20, they yelled at you, they punched me, *Page 7 
she fell on her own crutch, I didn't do anything, I was just there to help my children. Which is it? I don't know. Your view of this occurrence today is different than what it was and is certainly different than what the victims say happened.
 You pled guilty, and you have prior encounters with this family. So going over there, convincing me that it was just innocent effort to resolve problems with your children, it's difficult for me to believe that. When you say you're not a violent person, I see domestic violence, some dismissed, some found guilty I see so, I don't know. Criminal damaging, you're slashing tires. Same family. So you're going over there to just talk with the family where you back in `07, you slashed three tires. It's difficult for me to believe that, quite honestly. In fact, it lends credence on the other one.
 Your attorney indicated that you're responsible for four, five children. Responsible for and being responsible are two different things. And you haven't learned the difference. You have placed all dependents out there for which you're responsible but you have not done anything to demonstrate responsibility. And until you learn that difference, you'll never get any better. I'm also troubled by the fact you've been on probation before and there is a violation. And then the other incident I guess it just shows how minor things can come back to haunted [sic] you.
 These are both traffic offenses you picked up; driving under suspension December 14, 2006, you thought so little after that you picked up the same offense December 15 of 2006, although dismissed. But it just shows complete utter disrespect.
 Considering the purposes and principals [sic] of sentencing, the facts of this case, impact on the victim, your prior record, your lack of accepting responsibility, the Court does not believe a period of community control is appropriate, a term of imprisonment is. Accordingly you're referred to ODRC for a period of three years. * * *
(Tr. Dec. 27, 2007, 9-11.)
 {¶ 11} It is apparent from the above that, in sentencing appellant, the trial court did not consider any of the comments by appellant's counsel of which appellant now *Page 8 
complains. The trial court's sentence was based upon factors it could properly consider, including appellant's prior disregard for the law, his prior convictions, his lack of remorse, and the impact the crime had on the victim. Therefore, even if counsel's comments at the plea hearing and/or sentencing hearing could be construed as deficient performance, which we are in no way finding, appellant cannot show that the deficient performance prejudiced his sentence. Accordingly, we find appellant has failed to demonstrate his counsel was ineffective in this respect, and appellant's first assignment of error is overruled.
 {¶ 12} Appellant argues in his second assignment of error that the trial court erred when it failed to award him full jail-time credit as a result of inaccurate information submitted by his trial counsel. R.C. 2967.191 states as follows:
 The department of rehabilitation and correction shall reduce the stated prison term of a prisoner or, if the prisoner is serving a term for which there is parole eligibility, the minimum and maximum term or the parole eligibility date of the prisoner by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, and confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term.
Although R.C. 2967.191 mandates that the ODRC credit an inmate with jail time already served, it is the trial court that makes the factual determination as to the number of days of confinement that a defendant is entitled to have credited toward his or her sentence. State ex rel.Rankin v. Ohio Adult Parole Auth., 98 Ohio St.3d 476, 2003-Ohio-2061, at ¶ 7. *Page 9 
 {¶ 13} In the present case, during the sentencing hearing, when asked by the trial court for a jail-credit count, defense counsel indicated that appellant was entitled to 16 days on the present case. Appellant argues he was actually entitled to jail credit for 46 days. Specifically, appellant contends he was arrested on August 15, 2007, and held until August 31, 2007. Appellant was then placed under house arrest, until his bond was revoked at the plea hearing on November 29, 2007. He remained incarcerated through his sentencing hearing on December 27, 2007. Thus, appellant argues, he was first held for a period of 17 days, and later held for a period of 29 days, thereby entitling him to 46 days jail credit rather than the 16 days identified by trial counsel.
 {¶ 14} The state counters that the record on appeal does not establish any entitlement to additional jail-time credit. The state points out that appellant fails to mention in his appellate brief that he served two misdemeanor sentences after he was arrested and before he was ordered to prison in the instant case. Specifically, the state argues, the presentence investigation ("PSI") report reflects that appellant was sentenced to serve jail for two separate misdemeanor convictions for criminal damaging and prohibition/alcohol under the age of 21 ("alcohol case") while awaiting sentencing in the instant case. The state asserts that appellant has not demonstrated entitlement to jail-time credit for the misdemeanor offenses because they do not represent, pursuant to R.C. 2967.191, confinement "for any reason arising out of the offense for which the prisoner was convicted and sentenced."
 {¶ 15} A review of the PSI reflects that appellant was granted 10 days of jail-time credit for the time period of August 15, 2007 through August 24, 2007 in case No. 07CRB-3595 (the criminal damaging case), and that he was granted 21 days of jail-time *Page 10 
credit for the period of November 29, 2007 through December 18, 2007 in case No. 06CRB-16888 (the alcohol case). Further, the PSI reflects a total of 16 days jail-time credit for the instant offense, comprised of seven days from August 25, 2007 through August 31, 2007, and nine days from December 19, 2007 through December 27, 2007.
 {¶ 16} Insofar as appellant argues he was entitled to credit in the present case for jail sentences he served in the two other misdemeanor cases, we disagree. We first note that the issue of crediting a sentence with jail time served is one which is properly raised on direct appeal.State v. Thorpe (June 30, 2000), Franklin App. No. 99AP-1180. However, in the present case, appellant did not object to the jail credit at the time of sentencing, and, in fact, appellant's trial counsel indicated to the judge that 16 days of credit was appropriate. Because appellant failed to raise this issue in the trial court when it could have corrected any error, he has forfeited all but plain error for the purposes of appeal. See State v. Goings, Franklin App. No. 07AP-644,2008-Ohio-949, at ¶ 7 (no objections were raised at the sentencing hearing regarding defendant's jail-time credit; therefore, appellant has waived all but plain error), citing State v. Fugate, Franklin App. No. 06AP-298, 2006-Ohio-5748, at ¶ 19, reversed on other grounds, State v.Fugate, 117 Ohio St.3d 261, 2008-Ohio-856; State v. Fife, Champaign App. No. 2006-CA-33, 2007-Ohio-6588, at ¶ 12 (failure to raise error with regard to jail-time credit requires plain error for reversal); State v.Miller, Washington App. No. 07CA2, 2007-Ohio-5931, at ¶ 14 (defendant did not raise his jail-time credit argument in the trial court, thus, he has forfeited all but plain error).
 {¶ 17} After reviewing the evidence available in the record, we can find no error, plain or otherwise. As indicated above, R.C. 2967.191
requires a connection between the *Page 11 
jail-time confinement and the offense upon which the defendant is convicted. It is the duty of the appellant upon appeal to show an error in the jail-time credit calculation. State v. Evans, Montgomery App. No. 21751, 2007-Ohio-4892, at ¶ 13. If the appellant has failed to demonstrate error, and no miscalculation in the jail-time credit is apparent from the record, any claimed error must be overruled. Id.
 {¶ 18} In the present case, outside of the representations in the PSI, the record is devoid of evidence regarding appellant's sentences and time served with regard to his two misdemeanor convictions in unrelated cases. The limited information provided by the PSI report suggests that, in the criminal damaging case, a warrant was served on appellant on August 15, 2007, after he was arrested for the instant offense, and he was found guilty of criminal damaging and ordered to serve ten days of incarceration on August 24, 2007. It appears that appellant's term of incarceration for the criminal damaging offense ended on August 24, 2007, presumably because appellant was given credit for the ten days already served since August 15, 2007. In the alcohol case, appellant's probation was revoked on December 6, 2007, for a September 6, 2007 violation, and he was sentenced to 14 days incarceration. It is unclear from the record why his jail-time credit in the alcohol case was granted starting November 29, 2007, because his probation in that case was not revoked until December 6, 2007. It is possible that, when appellant's bond was revoked in the current case, an outstanding warrant for the probation violation in the alcohol case was triggered. Equally unclear is why the PSI indicates a credit until December 18, 2007, as the intervening number of days between November 29 and December 18, 2007 exceeds the 14-day sentence in the alcohol case. *Page 12 
Appellant has not raised these issues as error on appeal, and the record does not demonstrate that any error necessarily occurred.
 {¶ 19} Appellant's only argument herein is that he was entitled to jail-time credit for all time served from August 15, 2007 through December 27, 2007. The only evidence in the record before this court that relates to the calculation of appellant's jail-time credit is the PSI. The PSI indicates that appellant received jail-time credit for the time served pursuant to the two misdemeanor cases, and, for any other periods he was confined, he received jail-time credit for the present case. This court has before addressed this issue in a case with analogous facts. In State v. Smith (1992), 71 Ohio App.3d 302, the appellant was indicted on one felony count of aggravated burglary. He was arrested on April 27, 1991, and held in jail. On May 31, 1991, in an unrelated case, the appellant was sentenced to a term of incarceration by the municipal court for a misdemeanor count. At the time of appellant's sentencing for the felony offense, the appellant's trial counsel requested that the trial court grant the appellant jail-time credit for all of the time he served awaiting trial on the felony charge, including the time served on the misdemeanor offense. InSmith, supra, at 304, this court rejected the appellant's argument, holding in part:
 * * * R.C. 2967.191 requires that jail credit be given only for the time the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced. It does not entitle a defendant to jail-time credit for any period of incarceration which arose from facts which are separate and apart from those on which his current sentence is based. State v. Dawn
(1975), 45 Ohio App.2d 43 * * *
 In this case, appellant was incarcerated on a prior misdemeanor criminal conviction which was completely unrelated to the offense for which he was later sentenced by the trial court. Because the sentence in the municipal court case did not arise out of the offense for which appellant was *Page 13 
convicted in this case, appellant is not entitled to additional jail-time credit. * * *
 {¶ 20} Pursuant to Smith and R.C. 2967.191, there can be no dispute that appellant is not entitled to jail-time credit for any period of incarceration that arose from the criminal damaging and alcohol cases, as those offenses were unrelated to the current matter. There is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter. State v. Kesler, Portage App. No. 2007-P-0107, 2008-Ohio-4668, at ¶ 42, citing State v. Struble, Ashtabula App. No. 2005-L-115,2006-Ohio-3417, at ¶ 11. As the only evidence before this court supports the trial court's jail-time credit determination, and appellant has failed to support his argument with any evidence in the record, we must find that the trial court properly calculated his jail-time credit.
 {¶ 21} We also note that appellant has claimed his counsel was ineffective for indicating to the court that he was entitled to only 16 days of jail-time credit in the current case. However, given the PSI indicated 16 days of jail-time credit was appropriate for the current case, and appellant failed to demonstrate any error, we cannot find appellant's counsel was ineffective in this respect. Therefore, this argument is without merit. For the above reasons, we find the trial court did not err in granting the jail-time credit in the present case, and appellant's second assignment of error is overruled.
 {¶ 22} Accordingly, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 McGRATH, P.J., and SADLER, J., concur. *Page 1