[Cite as *State v. Williams*, 2017-Ohio-5598.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-540 |
| v. | : | (C.P.C. No. 15CR-4696) |
| Jerry D. Williams, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 29, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Carpenter Lipps & Leland LLP, Kort Gatterdam,* and *Erik P. Henry*, for appellant. **Argued:** *Kort Gatterdam.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Jerry D. Williams, appeals from an order of the Franklin County Court of Common Pleas sentencing him to a total of nine years incarceration, pursuant to a bench trial verdict, finding appellant guilty of one count of rape with a firearm specification, one count of gross sexual imposition with a firearm specification, one count of kidnapping with a firearm specification, and one count of having a weapon under disability. For the following reasons, we affirm the convictions and sentence.

## I. Facts and Procedural History

{¶ 2} Appellant was indicted on two counts of rape with firearm specifications, one count of gross sexual imposition with a firearm specification, one count of kidnapping with a firearm specification, and one count of having a weapon under disability. The

indictment alleged that on May 19, 2015, appellant compelled the victim, J.H., by force to submit to vaginal intercourse, digital vaginal penetration, and sexual contact, and that he restrained J.H.'s liberty for the purpose of committing rape and gross sexual imposition. The indictment further alleged that appellant had a firearm on or about his person or under his control while committing these offenses and displayed, brandished, indicated possession of, or used the firearm to facilitate the offenses. The indictment asserted that appellant was prohibited from possessing or using a firearm because he previously had been adjudicated a delinquent child for having committed the offense of robbery. Appellant waived his right to a jury trial and the charges were tried before the court.

{¶ 3} J.H. testified at trial that she met appellant, whom she knew as "J.D.," shortly before May 19, 2015, and had exchanged text messages with him. A subsequent police report indicated that some of appellant's text messages expressed a desire to have sex with J.H. J.H. testified appellant had asked her age and told her his age. J.H. was 17 years old at the time and told appellant he was too old for her to be romantically interested, but they could be friends. J.H. arranged to meet appellant on May 19, 2015 at the home of appellant's sister-in-law, which was located behind J.H.'s house, to watch a basketball game. J.H. testified she and appellant smoked marijuana and watched the basketball game in the living room. J.H. indicated there were other people in the house at the time, but they were in different rooms. After the basketball game ended, appellant invited J.H. to stay and watch a movie. They went to the basement to select a movie, in a room containing a bed and a television. J.H. testified that while they were picking out a movie to watch, appellant touched her on the thigh; she declined appellant's advances multiple times.

{¶ 4} J.H. testified appellant then went to an area near the bed and retrieved a gun. J.H. stated that when appellant leaned over to get the gun, she saw that a second gun was tucked into the front of his pants. J.H. testified one of the guns was silver and black and the other was all black, and she believed the guns were revolvers. Appellant forced J.H. to remove her clothes and told her she was going to have his son. J.H. testified that appellant climbed on top of her and forced his penis into her vagina; he had intercourse with J.H. until he ejaculated. While this was occurring, appellant pointed the gun at J.H.'s head. J.H. testified that when appellant was finished he kept touching her

and talking, as though he was trying to explain himself.  J.H. put her clothes back on and rushed out of the house.

{¶ 5}  J.H. testified that she ran home and showered because she felt disgusted and wanted the night to be over.  J.H.'s mother was home at the time, but J.H. did not want to talk to her about the incident.  J.H. told some friends who were waiting at her house what had occurred, and those friends then told J.H.'s mother.  J.H. testified that her mother then called police.  J.H. indicated that the officer who responded on May 19, 2015 was rude and placed her in the backseat of the cruiser to conduct an interview.  J.H. testified that she was not permitted to leave the cruiser.  She stated she was very uncomfortable being in the police cruiser and did not want to talk to the officer.  J.H. testified that she lied to the officer and told him nothing happened because she was panicking and wanted to be left alone.  J.H. testified that her mother called police again the following day and the officer who responded took her to the hospital, where she was examined.  J.H. told her story to police officers and a nurse at the hospital.  J.H. identified appellant in the courtroom as the man who raped her. On cross-examination, J.H. admitted that when the first responding officer was questioning her in the back of his cruiser, she told him that she felt pressured by appellant but that the sex was consensual. She further testified on cross-examination that she could not recall telling a police detective that appellant retrieved one gun from under the bed and the other from under a pillow.

{¶ 6}  J.H.'s mother, V.H., testified at trial that J.H. was angry when she returned home on May 19, 2015. V.H. asked what was wrong, but J.H. did not respond and immediately went upstairs and showered.  One of J.H.'s friends, who had been waiting for J.H. in her room, told V.H. that J.H. had been raped.  After hearing this, V.H. called police. V.H. testified that the responding officer placed J.H. in the back of his cruiser to speak with her, "treating her like she's a prisoner."  (Tr. at 17.)  V.H. stated that the first officer left without transporting J.H. to the hospital or taking further action.  V.H. called police again and complained that the first officer did not respond appropriately.  V.H. stated that the next day a detective arrived with two police officers, and that J.H. spoke with a female officer.  Officers collected J.H.'s clothing from the prior day and transported her to the hospital.

{¶ 7}    The first responding officer was Columbus Division of Police Officer James Braskie.  The dash camera recording of Officer Braskie's interview of J.H. in his police cruiser was played for the court.  Neither J.H. nor Officer Braskie were visible in the video, but their statements were audible.  During the interview, Officer Braskie asked J.H. multiple times whether she felt she was raped, and J.H. answered no.  However, J.H. also answered no when asked whether she wanted to have sex with appellant.  Although J.H. was not visible in the video, she clearly sounded upset, indicating that she did not want to talk about the incident.  At one point, Officer Braskie left J.H. alone in the cruiser and went to call a detective; during that portion of the recording, J.H. could be heard screaming for her mother and asking to be let out of the cruiser.  After listening to the recording of the interview at trial, J.H. confirmed that she answered no when Officer Braskie asked if she felt like she had been raped, but also answered no when asked if she wanted to have sex with appellant.

{¶ 8}    When V.H. called police on May 20, 2015, Columbus Division of Police Officer Heidi Dripps responded to J.H.'s home.  Officer Dripps interviewed J.H. outside the presence of her mother.  During the interview, J.H. indicated to Officer Dripps that she had a non-consensual sexual encounter with appellant.  After interviewing J.H., Officer Dripps contacted the sexual abuse squad and spoke with a detective who advised her to transport J.H. to the hospital.  Columbus Division of Police Officer Michael Cameron ("Detective Cameron")[1] testified that he was a detective in the sexual assault unit in May 2015, and interviewed J.H. after she was transported to the hospital on May 20, 2015.  Detective Cameron testified that, in his initial interview with J.H., she told him she had a negative experience with another officer the prior evening.  J.H. did not tell Detective Cameron that she denied having been raped when interviewed by Officer Braskie, but rather that Officer Braskie came to her home and refused to help her.  Detective Cameron contacted Officer Braskie and then interviewed J.H. a second time; as part of that second interview, he confronted J.H. about her prior statement to Officer Braskie. Detective Cameron testified that he was satisfied with J.H.'s explanation of her prior statement to Officer Braskie. Detective Cameron further testified that testing of the sexual assault examination kit completed at the hospital identified semen and DNA,

---

[1] At the time of trial, Cameron was assigned to the mounted unit of the Columbus Division of Police, but at the time of the investigation of this incident, he was a detective in the sexual assault unit. Therefore, we will refer to Cameron as "Detective Cameron" for purposes of this decision.

which was put into the offender database.  Detective Cameron stated that another officer showed J.H. a photo lineup containing appellant's photo.  J.H. identified appellant as the man who raped her and had an emotional reaction to seeing appellant's photo.

{¶ 9}  During the first interview with Detective Cameron, J.H. stated that appellant was seated on the bed and reached down beside the bed to retrieve a black handgun from between the mattress and box springs.  She told Detective Cameron that appellant placed this gun on his lap, and then pulled another black handgun from under one of the pillows on the bed.  J.H. told Detective Cameron that appellant pulled the slide on the second gun, as if to chamber a live round, and pointed it at her.  Appellant then ordered J.H. to stand and remove her clothes.  He kissed her neck and then pushed her onto the bed.  J.H. told Detective Cameron that appellant held the gun to her head while kissing her neck and massaging her breast.  Detective Cameron testified that J.H. did not mention appellant having a gun in the waist of his pants.

{¶ 10} The sexual assault nurse examiner who examined J.H. at the hospital testified she identified tenderness on J.H.'s external genitalia and bruising on her cervix, which were consistent with trauma.  The nurse examiner testified that the location of these injuries was consistent with an assailant being on top of J.H.  On cross-examination, the nurse examiner testified that these types of injuries could also occur during consensual sex.  The nurse examiner's report, which contained the description of the events that J.H. gave to the nurse, was introduced into evidence.  That report indicated J.H. told the nurse examiner that she and appellant were watching a movie when appellant grabbed her foot.  Appellant then reached between the wall and the table and retrieved a gun; he then retrieved a second gun from under the mattress.  Appellant pointed the gun at J.H. and told her to remove her pants.  When she refused, he cocked the gun and told her to remove her clothes or he would shoot her.  J.H. told the nurse examiner that appellant put the gun to her back and kissed her neck.  Appellant pushed her onto the bed, then climbed on top of her and inserted his penis into her vagina. Appellant indicated that he had ejaculated. J.H. told the nurse examiner she started crying and then put her clothes on and left.

{¶ 11} Plaintiff-appellee, State of Ohio, and appellant stipulated that forensic scientists from the Ohio Bureau of Criminal Investigation identified the presence of semen on vaginal samples collected from J.H. at the hospital, that a DNA profile was

extracted from the semen and compared with a known sample from appellant, and it was concluded that appellant's DNA was included in the mixture of DNA present on the vaginal sample. The state and appellant also stipulated that appellant had previously been found to be a delinquent child, having committed the offense of robbery.

{¶ 12} After the state completed its presentation, appellant's trial counsel moved for acquittal under Crim.R. 29. The trial court granted the motion with respect to the second count of the indictment, which asserted rape through digital penetration, finding there was insufficient evidence on that charge. The trial court denied the motion as to all other charges. Appellant's trial counsel introduced into evidence certain portions of the police reports related to the incident, but did not call any witnesses. The trial court found appellant guilty of rape through vaginal intercourse, gross sexual imposition, kidnapping, and having a weapon under disability. The trial court also found appellant guilty of the firearm specifications associated with the rape, gross sexual imposition, and kidnapping charges. The court concluded the kidnapping charge merged with the rape charge for purposes of sentencing.

{¶ 13} The trial court sentenced appellant to 6 years of mandatory imprisonment on the rape conviction and 3 years of mandatory imprisonment on the firearm specification associated with that charge. The court further sentenced appellant to 17 months imprisonment on the gross sexual imposition conviction and 3 years imprisonment on the weapon under disability conviction. The court provided that the terms for the rape and weapon under disability convictions were to be served consecutively, and concurrently with the term for the gross sexual imposition conviction, for a total sentence of 9 years imprisonment. The court informed appellant he was subject to a mandatory period of 5 years of post-release control and notified him of his sexual offender classification. The court found that appellant was entitled to 20 days of jail-time credit.

## II. Assignments of Error

{¶ 14} Appellant appeals and assigns the following four assignments of error for our review:

> [I.] THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION BASED ON INSUFFICIENT EVIDENCE AND AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS.

[II.] THE TRIAL COURT ERRED, CONTRARY TO THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS, AND CONTRARY TO *STATE V. HAND*, SLIP OPINION NO. 2016-OHIO-5504, WHEN IT FOUND APPELLANT GUILTY AND SENTENCED HIM FOR A WEAPON UNDER DISABILITY OFFENSE WHICH WAS BASED UPON A PRIOR JUVENILE ADJUDICATION.

[III.] THE TRIAL COURT ERRED IN CALCULATING APPELLANT'S JAIL-TIME CREDIT CONTRARY TO R.C. 2967.191, R.C. 2929.41, AND APPELLANT'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION.

[IV.] APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

## III. Discussion

### A. Weight and sufficiency of the evidence

{¶ 15} In his first assignment of error, appellant asserts there was insufficient evidence to support his convictions and that the trial court's judgment was against the manifest weight of the evidence. Although appellant purports to challenge both the sufficiency and the weight of the evidence, the majority of his argument centers on the weight of the evidence.

{¶ 16} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt," it is sufficient to sustain a conviction.

*Id.* "The testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. No. 15AP-42, 2015-Ohio-5118, ¶ 18. *See also State v. Conkel*, 10th Dist. No. 08AP-845, 2009-Ohio-2852, ¶ 14, citing *State v. Ruhlman*, 12th Dist. No. CA2005-05-125, 2006-Ohio-2137, ¶ 26 (for the proposition that the testimony of a victim as to the elements of sexual assault, if believed, is sufficient to establish the elements of the offense).

{¶ 17} The first count of the indictment charged appellant with rape, in violation of R.C. 2907.02, asserting that appellant engaged in vaginal intercourse with J.H., and that he purposely compelled her to submit by force or threat of force. Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A person acts purposely when it is his "specific intention to cause a certain result." R.C. 2901.22(A). J.H. testified that appellant climbed on top of her and forced his penis into her vagina. She further testified that appellant held a gun to her head during the rape. Viewed in the light most favorable to the prosecution, this evidence, if believed by the trial court, was sufficient to establish the elements of rape as charged in the first count of the indictment. *See State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 21-25.

{¶ 18} The third count of the indictment charged appellant with gross sexual imposition, in violation of R.C. 2907.05, asserting that appellant had sexual contact with J.H., and that he purposely compelled her to submit by force or threat of force. For purposes of R.C. 2907.05, "sexual contact" means "any touching of an erogenous zone of another, including * * * if the person is female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Detective Cameron testified that J.H. stated appellant kissed her on the neck and touched her breast while holding a gun to her head. This occurred immediately before appellant raped J.H. Similarly, the sexual assault nurse examiner's report indicated that J.H. stated appellant held the gun against her back and kissed her neck. Although J.H. did not mention appellant kissing her neck or touching her breast during her trial testimony, Detective Cameron's report, containing J.H.'s description of this contact, and the nurse examiner's report were both admitted into evidence. Viewed in the light most favorable to the prosecution, this evidence, if believed by the trial court, was sufficient to establish the elements of gross sexual imposition. *See State v. Brown*, 10th Dist. No. 14AP-101, 2014-Ohio-5043, ¶ 9-13.

{¶ 19} The fourth count of the indictment charged appellant with kidnapping in violation of R.C. 2905.01, asserting that, by force, threat, or deception, appellant removed J.H. from the place she was found or restrained her liberty for the purpose of committing rape or gross sexual imposition. Restraining an individual's liberty means limiting or restraining their freedom of movement. The restraint need not be for any specific duration or in any specific manner. *Taylor* at ¶ 18, citing 2 Ohio Jury Instructions, CR Section 505.01(A) (Rev. Jan. 20, 2007). J.H. testified at trial that appellant began to touch her thigh and she rejected his advances. Appellant then obtained one of the guns from near the bed and J.H. saw a second gun in appellant's pants. Appellant ordered J.H. to remove her clothes at gunpoint, and he was on top of her with the gun pointed at her head during the rape. She stated, "I was fighting, but then I couldn't fight no more because I was scared of the gun." (Tr. at 47.) J.H.'s testimony established that appellant restrained her liberty for the purpose of committing rape. *See State v. Logan*, 60 Ohio St.2d 126, 130 (1979) ("[I]mplicit within every forcible rape (R.C. 2907.02[A][1]) is a kidnapping."). Viewed in the light most favorable to the prosecution, this evidence, if believed by the trial court, was sufficient to establish the elements of kidnapping. *See Taylor* at ¶ 18-20.

{¶ 20} The rape, gross sexual imposition, and kidnapping charges against appellant each contained firearm specifications, asserting that appellant had a firearm on or about his person or under his control while committing the offenses and displayed, brandished, indicated possession of, or used the firearm to facilitate the offense. For purposes of the firearm specifications, a firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and includes "an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). In the present case, police did not recover any firearms, and appellant argues the state failed to establish the presence and operability of a firearm.

{¶ 21} The statute provides that when determining whether a firearm is operable, "the trier of fact may rely on circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). "It is not necessary for the state to produce the gun or offer direct, empirical evidence that the gun is operable." *State v. Whiteside*, 10th Dist. No. 07AP-951,

2008-Ohio-3951, ¶ 17. "Instead, proof of operability may be established through the testimony of lay witnesses who were in a position to observe the weapon and the surrounding circumstances." *Id.* This court has previously held that "[c]ircumstantial evidence can support a finding that a firearm was operable, including explicit or implicit threats made by the person in control of the firearm." *State v. Dutton*, 10th Dist. No. 09AP-365, 2009-Ohio-6120, ¶ 8. "A victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and exploit that belief for his own criminal purposes, is sufficient to prove a firearm specification." *Id.* "Even actions alone, without verbal threats, may constitute sufficient circumstances to establish the operability of a firearm." *Id.* at ¶ 9. *See also State v. Poulson*, 10th Dist. No. 09AP-778, 2010-Ohio-3574, ¶ 36-38 (holding that evidence supported finding that a firearm was operable where the defendant pointed it at store employees and ordered them into a back room, announced he was committing a robbery, and told one employee he was not going to shoot the employee, thus implying that the gun was real and had the ability to shoot).

{¶ 22} In the present case, J.H. testified at trial that appellant retrieved one firearm from an area near the bed, and the second gun was in the waistband of appellant's pants. She testified appellant pointed the gun at her head while forcing her to remove her clothes and while committing the rape. J.H. told the nurse examiner that appellant pointed the gun at her and told her to remove her clothes; when she refused, appellant cocked the gun and threatened to shoot her. She further told the nurse examiner appellant held the gun to her back while kissing her neck. Additionally, Detective Cameron's report indicated that J.H. stated appellant actioned the slide mechanism of the gun and pointed it at her. J.H. told Detective Cameron appellant held the gun to her head while kissing her neck and touching her breast. Viewed in the light most favorable to the prosecution, this evidence, if believed by the trial court, was sufficient to establish that appellant possessed and brandished an operable firearm while committing the offenses of rape, gross sexual imposition, and kidnapping, thus proving the essential elements of the firearm specifications associated with each charge.

{¶ 23} The fifth count of the indictment charged appellant with having a weapon under disability, in violation of R.C. 2923.13, asserting that appellant knowingly acquired, had, carried, or used a firearm, and that he had been adjudicated a delinquent child for an offense that, if committed by an adult, would have been a felony offense of violence.

Appellant stipulated at trial that he previously had been found to be a delinquent child, having committed the offense of robbery. As explained above, the circumstantial evidence presented at trial was sufficient to establish that appellant possessed an operable firearm during the commission of his crimes. Viewed in the light most favorable to the prosecution, appellant's stipulation and the evidence presented at trial regarding the firearms, if believed by the trial court, were sufficient to establish the elements of the charge of having a weapon under disability.

{¶ 24} Having concluded there was sufficient evidence to support each conviction, we turn to appellant's argument that the convictions were against the manifest weight of the evidence. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25.

> When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 12, citing *Thompkins* at 387. This authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In conducting our review of the evidence, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 25} Appellant argues that because he admitted to having intercourse with J.H., the main issues at trial were whether the intercourse was consensual and whether he possessed a firearm during the events. Appellant's arguments generally focus on J.H.'s

credibility, arguing that her statements were inconsistent during the investigation and at trial.  Appellant notes that J.H. told Officer Braskie multiple times that she was not raped or forced to have sex, and that her primary concern was whether she would get pregnant. Appellant also claims J.H. did not tell Officer Dripps or Detective Cameron that she had told Officer Braskie she was not raped.  Appellant further argues that various details in J.H.'s description of the incident changed throughout the investigation and at trial. J.H. did not mention firearms when she was interviewed by Officer Braskie.  Appellant also claims J.H. was inconsistent regarding from where appellant retrieved the gun in her statements to Officer Dripps, Detective Cameron, and the nurse examiner.  He argues her statement at trial about appellant having a gun in the waistband of his pants was inconsistent with her prior statements to police.  He claims J.H. also made inconsistent statements about whether she and appellant had begun watching a movie when the incident occurred or whether they had just gone to select a movie, about where she was positioned before the rape occurred, and about whether she or appellant removed her clothes.

{¶ 26} "[A]lthough an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility." *State v. Spires*, 10th Dist. No. 10AP-861, 2011-Ohio-3312, ¶ 18.  "[A] defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial." *Id*.  With respect to J.H.'s denial of having been raped during the interview by Officer Braskie, she also denied wanting to have sex with appellant and it was clear from the recording that she was upset and wanted to end the interview as quickly as possible. At trial, J.H. testified she lied to Officer Braskie because he was rude and she was uncomfortable being in the police cruiser, and because she did not want to talk about the incident.  Appellant's trial counsel cross-examined J.H. regarding the alleged inconsistencies in her statements during the investigation, and cross-examined Officer Dripps, Detective Cameron, and the nurse examiner about J.H.'s description of the incident.  Thus, the trial court was aware of the alleged inconsistencies and was able to consider these when weighing J.H.'s credibility.  Based on our review of the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot find

that the trial court clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.

{¶ 27} Accordingly, we overrule appellant's first assignment of error.

## B. Constitutionality of weapon under disability conviction

{¶ 28} In his second assignment of error, appellant argues that his conviction for having a weapon under disability violated the Ohio Constitution and the Federal Constitution. Appellant's trial counsel did not raise this issue at trial, therefore appellant has waived all but plain error. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15-16. "Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right." *State v. Lindsey*, 87 Ohio St.3d 479, 482 (2000). We take notice of plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 29} Appellant asserts his conviction for having a weapon under disability was unconstitutional because the disability arose from having been adjudicated a delinquent child on a charge of robbery in 2005. Appellant argues that, under the reasoning of the Supreme Court of Ohio in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, a prior juvenile adjudication that was not subject to the right to a jury trial cannot form the basis for a subsequent conviction for having a weapon under disability. In *Hand*, the court held that R.C. 2901.08(A) was unconstitutional "because it is fundamentally unfair to treat a juvenile adjudication as a previous conviction that enhances either the degree of or the sentence for a subsequent offense committed as an adult." *Id.* at paragraph one of the syllabus. The court further explained that "[b]ecause a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum." *Id.* at paragraph two of the syllabus. The *Hand* decision did not directly address the constitutionality of the weapon under disability statute, R.C. 2923.13, but appellant argues that the reasoning in *Hand* applies equally to that provision.

{¶ 30} "An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. The

decision in *Hand* was limited solely to the statute treating a prior juvenile adjudication as a prior "conviction" for purposes of determining the degree or the sentence for a subsequent offense committed as an adult.  *Hand* at ¶ 37.  Unlike the scenario in *Hand*, under R.C. 2923.13(A)(2), a prior juvenile adjudication does not result in an enhancement of the degree or potential punishment for an offense; instead, the fact of having been adjudicated a delinquent juvenile is one of the predicates for the offense.  The statute also prohibits possession of a firearm by individuals in other classifications that do not result from a trial by jury, such as individuals who are under indictment for a felony offense of violence or involving a drug of abuse, individuals who are drug dependent, or who have been adjudicated mentally incompetent.  R.C. 2923.13(A)(2) through (5).

{¶ 31} In *State v. Carnes*, 1st Dist. No. C-150752, 2016-Ohio-8019, the First District Court of Appeals recently affirmed a weapon under disability conviction where the disability "was a [prior] juvenile adjudication for an offense that would have constituted felonious assault had [the defendant] been an adult."  *Id.* at ¶ 2.  The majority rejected the applicability of *Hand* to R.C. 2923.13(A)(2) and found it to be not relevant because *Hand's* holding is limited to banning the use of a juvenile adjudication to enhance punishment.  *Carnes* at ¶ 15.  The dissent in *Carnes* disagreed and reasoned:

> Th[e] fundamental unfairness [of allowing juvenile adjudications that result from less formal proceedings to be characterized as criminal convictions that may later enhance adult punishment], sufficient to deny a defendant due process of law, is even more apparent when a juvenile adjudication is the essential predicate for a criminal proceeding, where its use results not just in a longer sentence but in a loss of liberty itself. If juvenile adjudications are not reliable enough to enhance a criminal sentence, surely they are not sufficiently reliable to alone sustain proof beyond a reasonable doubt of an element of a crime.

*Id.* at ¶ 19 (Cunningham, P.J., dissenting).

{¶ 32} Given the factual differences in *Hand* and the case before us, as well as the timing of *Hand's* release after the trial court made its determination in this case, pursuant to the plain error standard, we cannot find that the trial court committed plain error in finding a prior juvenile robbery adjudication to constitute a disability for the purpose of appellant's conviction for having a weapon under disability.

{¶ 33} Accordingly, we overrule appellant's second assignment of error.

## C. Award of jail-time credit

{¶ 34} Appellant asserts in his third assignment of error that the trial court erred in calculating the jail-time credit to which he was entitled. R.C. 2967.191 provides that a prisoner shall receive jail-time credit for "the total number of days that the prisoner was confined for any reason *arising out of the offense for which the prisoner was convicted and sentenced*, including confinement in lieu of bail while awaiting trial." (Emphasis added.) "Although R.C. 2967.191 mandates that prison authorities credit an inmate with jail time already served, it is the responsibility of the trial court to make the factual determination as to the number of days of confinement that a defendant may receive." *State v. Doyle*, 10th Dist. No. 12AP-567, 2013-Ohio-3262, ¶ 20, citing *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, ¶ 7.

{¶ 35} The trial court awarded appellant 20 days of jail-time credit. Appellant did not object to the jail-time credit at sentencing; appellant's counsel indicated that 20 days was the correct amount of jail-time credit. Accordingly, appellant has waived all but plain error for purposes of appeal. *State v. Hunter*, 10th Dist. No. 08AP-183, 2008-Ohio-6962, ¶ 16.[2]

{¶ 36} In the present case, appellant was indicted on September 24, 2015. A warrant was issued as a detainer to the Ross County jail that same day. Appellant entered a not guilty plea in the Franklin County Court of Common Pleas on November 6, 2015, and his bond was set at $150,000. The record includes multiple warrants to convey appellant from the Ross County jail to the Franklin County jail for various portions of the proceedings, thus reflecting that appellant was in custody in Ross County at times and in custody in Franklin County at times while this case was proceeding. At sentencing in the present case, on June 28, 2016, appellant's trial counsel informed the court that appellant had not been released from custody by Ross County on June 7, 2016, but continued to be held pursuant to the Franklin County detainer. This formed the basis for the 20-day request for jail-time credit made by appellant's trial counsel.

{¶ 37} Appellant argues that he was entitled to 236 days of jail-time credit in the present case, from November 6, 2015, to June 28, 2016, citing the Supreme Court's decision in *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856. In *Fugate*, the court held

---

[2] The state asserts that we should apply the invited error doctrine because appellant's trial counsel requested 20 days of jail-time credit, which the trial court awarded. *See* Appellee's Brief at 17-18. However, in cases such as *Hunter*, this court has applied the plain error standard in similar circumstances. *See Hunter* at ¶ 16.

that "defendants who are sentenced to concurrent prison terms are entitled to have jail-time credit applied toward all prison terms for charges on which they were held." *Id.* at ¶ 1. In *Fugate*, the Supreme Court determined that time served as a result of a community control violation on a previous offense should be credited to the community control case as well as to a new case within which he was indicted on two new felony offenses while the community control case was pending. The facts in *Fugate* differ significantly from the facts here, where appellant was subject to a detainer from Franklin County while being held on the separate Ross County case.

{¶ 38} In *Doyle*,[3] we referred to our holding in *Hunter* that:

> R.C. 2967.191 requires jail-time credit for "the total number of days that the prisoner was confined for any reason *arising out of the offense* for which the prisoner was convicted and sentenced." (Emphasis added.) The statute therefore "requires a connection between the jail-time confinement and the offense upon which the defendant is convicted." *State v. Thomas*, 10th Dist. No. 12AP-144, 2012-Ohio-4511, ¶ 6. As a result, "[t]here is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter." *State v. Hunter*, 10th Dist. No. 08AP-183, 2008-Ohio-6962, ¶ 20.

*Id.* at ¶ 20.

{¶ 39} Appellant acknowledges that he was sentenced to time-served in the Ross County case, but argues the sentence in the present case should have been imposed concurrent to that sentence, claiming that he was held on both cases at the same time and should have received jail-time credit on both cases. Nevertheless, appellant did not address, and the record does not reveal, whether the detention in the Ross County case arose out of the offense for which he was convicted and sentenced in the present case. Or, stated differently, whether there is a connection between the confinement in the Ross County case and the offense in the present case.

{¶ 40} It is the duty of the appellant on appeal to show an error in the jail-time credit calculation. "If the appellant has failed to demonstrate error, and no miscalculation in the jail-time credit is apparent from the record, any claimed error must be overruled."

---

[3] We note our discussion in *Doyle* that under *Fugate* "*pretrial* detention time on one charge, even when the defendant is simultaneously detained awaiting trial on other, unrelated charges, is creditable in most circumstances." (Emphasis sic.) *Id.* at ¶ 25.

*Hunter* at ¶ 17. The state argues the record is insufficient to adequately determine if any error occurred. We agree. Considering the insufficient record, the factual differences with *Fugate*, and our statements in *Hunter*, we cannot say that the trial court committed plain error in only granting 20 days of jail-credit conceded by appellant below to be correct.

{¶ 41} Accordingly, we overrule appellant's third assignment of error.

## D. Ineffective assistance of counsel

{¶ 42} Appellant claims in his fourth assignment of error that his trial counsel provided ineffective assistance by failing to call a particular witness to testify, failing to object to the trial court questioning witnesses, failing to provide mitigation evidence at sentencing, and failing to request the correct amount of jail-time credit. Appellant also argues that the cumulative effect of these alleged errors by his trial counsel resulted in ineffective assistance.

{¶ 43} We apply a two-part test to evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland* at 687. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "Judicial scrutiny of counsel's performance must be highly deferential [and] [b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689; *Bradley* at 141. We will consider each of appellant's claims of ineffective assistance in turn.

## 1. Failure to call Officer Braskie as a witness

{¶ 44} Appellant first argues his trial counsel provided ineffective assistance by failing to call Officer Braskie as a witness at trial. Appellant asserts Officer Braskie could have testified that J.H. denied being raped multiple times when he was interviewing her in her house, before the portion of the interview that occurred in his police cruiser. Appellant claims Officer Braskie could have provided additional testimony about J.H.'s demeanor during the interview. Appellant also claims that Officer Braskie could have

rebutted J.H.'s testimony regarding his conduct during the interview and her claim that he would not let her out of the police cruiser.

{¶ 45} Generally, counsel's decision whether to call a particular witness falls within the purview of trial strategy, and a reviewing court will not second guess that decision. *State v. Davis*, 10th Dist. No. 09AP-869, 2010-Ohio-4734, ¶ 18. Additionally, "a defendant is not deprived of effective assistance of counsel when counsel chooses, for strategical reasons, not to pursue every possible trial tactic." *State v. Brown*, 38 Ohio St.3d 305, 319 (1988). In this case, the video of Officer Braskie's interview with J.H. was played for the court. Although neither Officer Braskie nor J.H. were visible on the video, the trial court would have been able to make its own evaluation of J.H.'s demeanor based on the audio of her statements on that video. Appellant's counsel cross-examined J.H. about the interview conducted by Officer Braskie and she admitted that she denied having been raped during that interview. While calling Officer Braskie as a witness may have served to reinforce these points, appellant's trial counsel had already raised them for the trial court's consideration.

{¶ 46} Moreover, assuming for purpose of analysis that appellant's trial counsel performed deficiently by failing to call Officer Braskie to testify, that is only the first step of the test for ineffective assistance of counsel. Appellant must also demonstrate a reasonable probability that, but for this failure, the outcome of the trial would have been different. *Bradley* at paragraph three of the syllabus. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. Appellant argues that Officer Braskie "would have essentially testified J.H. was a liar." (Appellant's Brief at 41.) To the extent appellant's defense depended on challenging J.H.'s credibility, appellant's trial counsel pursued this strategy throughout the trial by the cross-examination of J.H. and the prosecution's other witnesses. The trial court was aware of the alleged inconsistencies in J.H.'s description of the events and still found her testimony sufficiently credible to find appellant guilty. Appellant has failed to demonstrate a reasonable probability that calling Officer Braskie to testify would have changed the trial court's credibility determination and resulted in a different outcome.

## 2. Failure to object to trial court questioning witnesses

{¶ 47} Appellant next argues his trial counsel was ineffective by failing to object to the trial court asking questions of witnesses, particularly J.H., during a bench trial.

Appellant asserts the trial court's questions helped the prosecution in proving its case. Appellant cites the Supreme Court's decision in *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, which identified concerns with permitting jurors to question witnesses during trial, and argues that these concerns apply equally when the trial court asks questions of witnesses in a bench trial when it is acting as the finder of fact.

{¶ 48} Generally, in a bench trial, we presume the trial court relied on only relevant, material, and competent evidence in reaching its judgment absent a showing to the contrary. *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 24, citing *State v. Richey*, 64 Ohio St.3d 353, 357 (1992). The Rules of Evidence expressly provide that the court may interrogate witnesses in an impartial manner. Evid.R. 614(B). " 'In absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.' " *State v. Baston*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98 (2d Dist.1982).

{¶ 49} The Supreme Court considered the practice of allowing jurors to question witnesses in *Fisher*. The court noted there were several potential benefits, but also addressed concerns with the practice:

> Courts have identified four principal dangers inherent in juror questioning: (1) jurors may submit inadmissible questions, (2) counsel may refrain from objecting to improper questions for fear of offending jurors, (3) juror interruptions may disrupt courtroom decorum, and (4) such questioning may distort juror impartiality.

*Id.* at ¶ 24, citing *Spitzer v. Haims & Co.*, 217 Conn. 532, 546-47 (1991). The *Fisher* decision did not address the scenario of the trial court asking questions when conducting a bench trial. Contrary to appellant's assertion, the concerns identified in *Fisher* do not apply with equal force in that scenario. It is less likely that the trial court would ask an inadmissible question. Similarly, it is unlikely that the trial court's questions would disrupt courtroom decorum or distort the court's own impartiality.

{¶ 50} In the present case, the court asked questions during direct examination of V.H., direct examination and cross-examination of J.H., direct examination of Detective Cameron, and direct examination of the nurse examiner. The trial court's questions

appear to have been generally intended to clarify factual issues, such as the following questions posed to J.H.:

> The Court: Can you describe the gun for me, please?
>
> [J.H.]: One of them was like a silver and black, and one was all black.
>
> The Court: Do you know the difference between a revolver and a semiautomatic?
>
> [J.H.]: It's not a semiautomatic. I would probably say it's like a revolver.
>
> The Court: So one was silver and black, you're saying, and one was --
>
> [J.H.]: All black.
>
> The Court: Did he hold both guns?
>
> [J.H.]: I saw one gun, but the other gun was in his pants.
>
> The Court: Where at in his pants?
>
> [J.H.]: Right here, like in the front.
>
> The Court: Was that gun in his pants when you guys were upstairs watching basketball?
>
> [J.H.] I don't know.
>
> The Court: All right. Go ahead. Thank you.

(Tr. at 44-45.) The court also intervened to prevent J.H. from testifying to inadmissible hearsay:

> [J.H.]: I would say a couple days later, I'm coming from BP, and he'll walk behind me and --
>
> The Court: Okay. Stop there. So you can't testify as to what he told you unless -- it wasn't him, is that correct? It's not the defendant. You're saying it's the defendant's either brother or brother-in-law?
>
> [J.H.]: Uh-huh.
>
> The Court: He said something to you?

You have to answer out loud.

[J.H.]: Yes.

The Court: As a result of him saying something to you, did you do something? What did you do?

[J.H.]: I didn't say anything. I got scared and rushed home because I didn't know if he was talking to me or if he was talking to a different person.

The Court: Okay.

(Tr. at 53-54.)

{¶ 51} The questions asked by the trial court do not demonstrate any prejudice or bias, and they do not appear to have resulted in the introduction of inadmissible or irrelevant evidence. Appellant has failed to establish that his trial counsel performed deficiently by not objecting to the trial court's questions. Additionally, appellant has failed to establish a reasonable probability that the result of the trial would have been different if his counsel had objected to the trial court's questions.

**3. Failure to provide mitigating evidence at sentencing**

{¶ 52} Appellant also claims his trial counsel was ineffective by failing to provide mitigating evidence during sentencing. Before the court imposed sentence, appellant's trial counsel asked the court not to penalize appellant for not speaking on his own behalf. He also mentioned that appellant had three children and asked the trial court not to impose the maximum sentence on appellant.

{¶ 53} "Generally, trial counsel's decision as to what mitigating evidence to present is a matter of trial strategy." *State v. Phipps*, 10th Dist. No. 14AP-545, 2015-Ohio-3042, ¶ 21, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 37. In this case, the trial court proceeded directly to sentencing after announcing its verdict. Appellant's trial counsel expressed difficulty in transitioning immediately to the sentencing phase. Therefore, his failure to provide additional mitigating evidence may not have been a strategic decision. Assuming for purposes of analysis that appellant's trial counsel performed deficiently, however, appellant must also demonstrate a reasonable probability that the sentence would have been different if additional mitigating evidence

was provided.  The trial court announced his intention to impose a mid-range sentence, having concluded that the facts in the case were "pretty egregious."  (Tr. at 201.)  The court initially announced it would impose a ten-year sentence, but after being informed that appellant would not be eligible for judicial release on the rape charge, modified the sentence to a total of nine years.  Although appellant claims that his trial counsel could have argued that it was not one of the worst forms of the offense or provided background to establish that appellant was not likely to commit future crimes, the trial court appears to have had a firm position on the appropriate sentence.  Under these circumstances, we conclude that appellant has not demonstrated a reasonable probability that his sentence would have been different if his trial counsel had provided additional mitigating evidence during the sentencing phase.

### 4. Failure to argue that weapon under disability conviction was unconstitutional

{¶ 54} Appellant further argues that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of his conviction for having a weapon under disability.  Appellant's constitutional argument is based on an extension of the Supreme Court's decision in *Hand*.  The *Hand* decision was issued on August 25, 2016.  The trial and sentencing in the present case were held on June 27th and 28th, 2016.  Thus, the Supreme Court had not decided *Hand* at the time of appellant's trial and sentencing.  Appellant argues, however, that his trial counsel could have objected to preserve a constitutional challenge to the weapon under disability conviction because, prior to his trial, the Supreme Court had accepted jurisdiction over the appeal in *Hand*.

{¶ 55} As explained above, *Hand* involved a challenge to the constitutionality of R.C. 2901.08(A), whereas appellant was charged with having violated R.C. 2923.13(A)(2).  An objection to appellant's conviction under R.C. 2923.13(A)(2) based on the fact that the Supreme Court had taken jurisdiction over the appeal in *Hand* would have been highly speculative—essentially arguing that the court *might* hold R.C. 2901.08(A) unconstitutional based on reasoning that *might* also apply to R.C. 2923.13(A)(2).  Under these circumstances, we cannot conclude that appellant's trial counsel performed deficiently by failing to object to the constitutionality of appellant's conviction for having a weapon under disability.  *See, e.g., State v. Meeds*, 2d Dist. No. 2003 CA 5, 2004-Ohio-3577, ¶ 21-22 (holding that court could not conclude trial counsel was ineffective for

failing to present "novel argument" regarding whether a confession was made during the course of plea negotiations that would have been an issue of first impression in the state).

## 5. Failure to request additional jail-time credit

{¶ 56} Appellant claims that his trial counsel also provided ineffective assistance during sentencing by failing to request more than 20 days of jail-time credit. As explained above, we conclude the trial court did not commit plain error by failing to evaluate whether appellant was entitled to jail-time credit for any of the period that he was held subject to the detainer issued by the Franklin County trial court. Our determination is based in large part due to lack of record regarding the Ross County case as well as the factual differences between this case and *Fugate*. With this in mind, on direct appeal, we cannot say that appellant's trial counsel performed deficiently by requesting only 20 days of jail-time credit.

## 6. Cumulative effect of ineffectiveness

{¶ 57} Finally, appellant argues that the cumulative effect of his trial counsel's alleged errors deprived him of his right to a fair trial. However, as explained above, with the exception of the failure to request additional jail-time credit, which is rendered moot by our decision on the merits of that issue, none of appellant's individual claims of ineffective assistance of counsel has merit. Appellant cannot establish that he is entitled to relief simply by combining those unsuccessful claims together. *See State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 134 (rejecting claim that cumulative effect of counsel's errors and omissions constituted ineffective assistance of counsel where court rejected each of appellant's individual claims of ineffective assistance); *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 173 ("[B]ecause none of Mammone's individual claims of ineffective assistance has merit, he cannot establish an entitlement to relief simply by joining those claims together."); *State v. Cline*, 10th Dist. No. 05AP-869, 2006-Ohio-4782, ¶ 29 ("Finding no instances of ineffective assistance of counsel, we find no cumulative error as a result of the combined effect of the alleged instances of ineffective assistance of counsel.").

{¶ 58} Accordingly, we overrule appellant's fourth assignment of error.

## IV. Conclusion

{¶ 59} For the foregoing reasons, we overrule appellant's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, J., concurs.
HORTON, J., concurs in part and dissents in part.

HORTON, J., concurring in part and dissenting in part.

{¶ 60} While I concur with the majority in part, I respectfully dissent regarding its decision to overrule Williams' second assignment of error.

{¶ 61} The Fifth Amendment of the United States Constitution recognizes that a defendant must not be deprived of liberty "without due process of law," and the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." The United States Supreme Court has long recognized that "these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995).

{¶ 62} This foundational principle—that every element of a crime must be proved beyond a reasonable doubt—also applies to facts that, if proved, increase the penalties a defendant faces. This is because "a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed." *Alleyne v. United States*, ___U.S.___, 133 S.Ct. 2151, 2158 (2013). Thus, in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Alleyne*, the court recognized that this requirement also applies to facts that increase a statutorily prescribed mandatory minimum sentence. *Alleyne* at 2158.

{¶ 63} As *Apprendi* made clear, the one exception is "the fact of a prior conviction," which need not be submitted to a jury. *Id.* at 490. The Supreme Court of Ohio explained this exception in *State v. Hand*, 149 Ohio St.3d 94, 2016-Ohio-5504, at ¶ 31:

> But prior convictions are treated differently only because
> 'unlike virtually any other consideration used to enlarge the
> possible penalty for an offense, * * * a prior conviction must

> itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.' *Jones v. United States,* 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Thus, at the heart of *Apprendi's* narrow exception is the concept that the prior conviction was the result of a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt.

{¶ 64} Because, however, the Sixth Amendment right to a jury trial is absent from juvenile adjudications, *Hand* determined that such adjudications could not be included in *Apprendi's* exception for actual convictions:

> Given the United States Supreme Court's emphatic pronouncements on the importance of the right to a jury trial, it is logical to conclude that the court meant to limit the prior-conviction exception to prior proceedings that satisfied the jury-trial guarantee. Because a juvenile adjudication is not established through a procedure that provides the right to a jury trial, it cannot be used to increase a sentence beyond a statutory maximum or mandatory minimum.

*Hand* at ¶ 34. The court further reasoned:

> The right to a jury trial is fundamental to due process just as the right to counsel is fundamental. But in juvenile proceedings, there is no right to a jury because the focus is on rehabilitation rather than punishment. To convert an adjudication into a conviction when the adjudication process did not provide the right to have a jury test the elements of that offense offends due process and *Apprendi* and thus the state cannot treat a prior juvenile adjudication as a prior conviction to enhance the penalty for a subsequent conviction.

*Id.* at ¶ 36.

{¶ 65} Applying these principles, the Supreme Court of Ohio held that R.C. 2901.08(A), a statute that treated a juvenile adjudication as a conviction for purposes of determining the offense level and sentencing, violated the Due Process Clauses of the United States Constitution and the Ohio Constitution. *Id.* at ¶ 37.

{¶ 66} In this case, Williams was convicted of having a weapon while under disability under R.C. 2923.13. The statute states that "no person shall knowingly acquire, have, carry, or use any firearm" in a number of circumstances. Relevant here is the prohibition on carrying a firearm if a defendant "has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense

that, if committed by an adult, would have been a felony offense of violence." R.C. 2923.13(A)(2). The statute treats a defendant's previous conviction for a violent offense, or a delinquency adjudication of what would have been a violent offense if committed by an adult, as two alternatives to prove the same element of the offense. However, only the first alternative—actual conviction—results from a constitutionally sound process that affords a defendant all the rights to which he is entitled under the Fifth and Sixth Amendments. *See Hand* at ¶ 31. Thus, Williams' conviction under the other element, which requires only a delinquency adjudication resulting from a process that did not include the right to a jury trial, violated his right to due process. In the juvenile court, no "jury test[ed] the elements of that offense," and, under *Hand*, it cannot be treated as a prior conviction to support an offense. *Id.* at ¶ 36.

{¶ 67} The majority asserts that *Hand* does not control because it "was limited solely to the statute treating a prior juvenile adjudication as a prior 'conviction' for purposes of determining the degree or the sentence for a subsequent offense committed as an adult," and, here, "under R.C. 2923.13(A)(2), a prior juvenile adjudication does not result in an enhancement of the degree or potential punishment for an offense; instead, the fact of having been adjudicated a delinquent juvenile is one of the predicates for the offense." (Majority Decision at ¶ 30.) When considering constitutional challenges to convictions for having a weapon while under disability based on a defendant's previous delinquency adjudication, other Ohio courts of appeals have pointed to this same purported distinction as a justification for not applying *Hand*. *State v. McComb*, 2d Dist. No. 26884, 2017-Ohio-4010, ¶ 26 ("*Hand* does not ban the use of a prior juvenile adjudication as an element of an offense; rather, *Hand* bans the use of a juvenile adjudication to enhance a penalty by treating the adjudication as an adult conviction."); *State v. Hudson*, 7th Dist. No. 15 MA 0134, 2017-Ohio-645, ¶ 51 (declining to apply *Hand* because the case before did "not involve increasing the degree of an offense or enhancing a penalty for an offense," but involved "a juvenile with a prior adjudication for an offense that would be a felony of violence if committed by an adult"); *State v. Carnes*, 1st Dist. No. C-150752, 2016-Ohio-8019, ¶ 15 (interpreting *Hand* as "limited to banning the use of a juvenile adjudication to enhance punishment").

{¶ 68} However, constitutionally there is no distinction between facts that enhance punishment and the facts that prove an element of the crime. The United States Supreme

Court stated this unequivocally in *Alleyne* when explaining *Apprendi*: "In *Apprendi*, we held that a fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed." *Alleyne* at 2158. *Apprendi* as well states that "facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." *Apprendi* at 483, fn. 10. The equivalency is sound, as it merely emphasizes the foundational principle that every element of a crime must be proved beyond a reasonable doubt. *Gaudin* at 510.

{¶ 69} Because every element must be proved to a jury beyond a reasonable doubt, the burden on the state to convict a defendant for robbery is not equivalent to, and is much heavier than, what it must prove to secure an adjudication of delinquency against a minor. R.C. 2901.08, the statute invalidated in *Hand*, and R.C. 2923.13, the weapons while under disability statute, both equated convictions and delinquency adjudications. Thus, I disagree with the majority that *Hand* is limited to R.C. 2901.08, the statute it invalidated, and I would apply its reasoning to any conviction under R.C. 2929.13 based on a juvenile adjudication. For the foregoing reasons, I would sustain the second assignment of error, vacate Williams' conviction under R.C. 2929.13, and remand for resentencing.

_____